IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| NATHAN CARR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 3:11-cv-764-CSC |
| ) | (WO) |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff, Nathan Carr, applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, alleging that he was unable to work because of a disability. His application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, ALJ Mary E. Helmer also denied the claim. (R. 16-22). The Appeals Council rejected a subsequent request for review on July 14, 2011. (R. 1). The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3). For the reasons stated below, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[1] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[2]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.

---

[1]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[2]  *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** Carr was 45 years old at the time of the hearing before the ALJ. (R. 26, 47). He completed school through the tenth grade and was enrolled in special education classes in the sixth and seventh grades. (R. 32). His prior work consists of work as a forklift operator, and his last job as a forklift operator ended in December 2008 when the plant at which he was working closed down. (R. 31, 40). Following the administrative hearing, the ALJ concluded that the Carr has a severe impairment of atopic dermatitis and a non-severe impairment of hypertension. (R. 18). The ALJ found that Carr had the residual functional capacity to perform medium work, with the following limitations:

3

> [H]e would be precluded from climbing ladders, ropes, and scaffolds. He should avoid exposure to extreme temperatures, irritants such as fumes, odors, dust, gases, and poorly ventilated areas. He would be precluded from exposure to hazardous machinery and unprotected heights. He would be limited to tasks that are simple, routine and repetitive.

(R. 20).

The ALJ determined that Carr could not perform his past relevant work. (R. 21). Nonetheless, based on the testimony of the vocational expert, the ALJ concluded that a significant number of jobs exist in the national economy that Carr could perform, including medium, unskilled occupations such as grocery bagger, dining room attendant, and hand packager. (R. 21). Accordingly, the ALJ concluded that Carr is not disabled.

**B. The Plaintiff's Claims.** As framed by the plaintiff, the issues presented are

(1)  Whether the administrative appeals council erred when it did not remand the case to the ALJ in light of new evidence, and

(2)  Whether ALJ failed to adequately develop the record.

(Plaintiff's brief at 1).

## IV. Discussion

**A.  The Commissioner did not err in determining that Carr's condition did not meet or medically equal the listing for skin disorders found in 20 C.F.R. pt. 404, Subpart P, Appx. 1, § 8.00.**

**1.  The contents of the complete medical record do not conflict with the ALJ's findings.**

According to Carr, he has suffered from eczema since 1984. (R. 207). Carr testified at the hearing in this case that he stopped working as a forklift operator in 2008 because the plant at which he worked closed down, and that he cannot work because of his skin

condition. (R. 34). At the time of the administrative hearing, and at the time the ALJ issued her opinion in this case,[3] the record contained only a small portion of Carr's medical records. (R. 16-22, 44, 191-209). On appeal, Carr submitted his complete medical records (R. 219-226), and the Appeals Council considered the complete medical record in its decision not to remand the case to the ALJ for further consideration. (R. 1-2, 4).

Carr's complete medical records contain documentation and lab reports confirming that he had atopic dermatitis as early as 1999. (R. 225-26). On October 25, 2001, and again on October 7, 2003, Carr sought medical treatment for severe atopic dermatitis for which cyclosporin was prescribed. (R. 223-24).

An April 6, 2004, treatment note by Dr. Gary Harrelson states that Carr had eczema and was again "scheduled to go on [c]yclosporin." (R. 205).

On October 18, 2004, Carr sought treatment from Dr. Robert Calcote for severe atopic dermatitis. Dr. Calcote noted:

> [Carr is] [c]omplaining of intense itching. Patient has been off of [c]yclosporin by his own initiation of weeks' duration. . . . Over 45 minutes spent counseling the patient at great length. Will start [c]yclosporin therapy at 100 mg po bid. . . . He is to return for followup in six weeks.

(R. 222).

The medical record contains no record of a followup medical appointment six weeks after October 18, 2004.

---

[3]To allow for submission of complete medical records, the ALJ left the record open for supplementation following the hearing, but the additional records were not provided until after the ALJ issued an opinion in this case. (R. 16-22, 44).

On March 17, 2005, Carr sought medical treatment from Dr. Calcote. Dr. Calcote noted:

> Patient has a long history of atopic dermatitis. He has been on numerous topical and oral medications in the past. He is currently on [c]yclosporin 100 mg bid. Patient is taking Diovan for elevated blood pressure. States that he has some pruritus periodically. Family history is pertinent for hypertension . . . . His blood pressure is 160/104. . . . Atopic dermatitis well controlled with [c]yclosporin. Patient has elevated blood pressure at the current time however. Will employ intense emolliation, a high potency steroid and will discontinue [c]yclosporin at the present time and check laboratory data.

(R. 222).

On April 6, 2006, Dr. Calcote treated Carr for severe atopic dermatitis, with "erythema and scale over 75-80% of the body." (R. 221). Dr. Calcote noted that Carr "has been on [c]yclosporin in the past" and "will restart [c]yclosporin 100 mg b.i.d." (R. 221). Dr. Calcote stated that Carr was to return for followup in six weeks, but the record contains no indication of a followup visit. (R. 221).

Treatment notes indicate that Carr was not suffering from a rash or new lesions on September 21, 2006, when he sought medical treatment for hypertension. (R. 196, 198).

On October 3, 2006, Dr. Calcote again treated Carr for "severe eczematious patches over [his] trunk and extremities." (R. 221). Dr. Calcote noted that Carr "ha[d] not been taking [c]yclosporin as prescribed" and that cyclosporin therapy would be re-initiated. (R. 221).

On November 2, 2006, a physician treating Carr for hypertension noted that rash and new lesions were "not present." (R. 196).

On July 9, 2007, Carr again sought treatment from Dr. Calcote for severe atopic dermatitis. Dr. Calcote noted that Carr "has not been on [c]yclosporin for many months" and again re-initated treatment with cyclosporin. (R. 221).

On October 8, 2007, Carr visited Dr. Calcote for followup for his severe atopic dermatitis. (R. 220). Dr. Calcote noted that Carr was "found to be in remission" and that the treatment plan was for Carr to continue taking cyclosporin. (R. 220).

On January 18, 2008, Dr. Calcote noted that Carr was "currently on [c]yclosporin 100 mg b.i.d.," and that Carr had "no complaints relative to therapy," had " no significant lesions at the current time," and "will continue [the] current regimen." (R. 220).

On August 22, 2008, Dr. Calcote treated Carr again for severe atopic dermatitis. At that time, Carr had "erythema, scale, crusting, and lichenification of 90 percent over [his] trunk and extremities." (R. 220). Dr. Calcote again prescribed 100 mg cyclosporin twice daily. (R. 220).

On April 10, 2009, Dr. Calcote treated Carr for dermatitis. (R. 220). Carr reported that the dermatitis was flaring up. (R. 220). At that time, Dr. Calcote "re-initiate[d] therapy with [c]yclosporin 100 mg b.i.d." (R. 220).

On May 11, 2009, Dr. Al Vester, a consulting physician, examined Carr and noted that Carr had notably dry skin and lesions that "virtually cover his entire body." (R. 208). At that time, Carr was not taking his medication.[4] (R. 207, 219).

---

[4] At the time of Dr. Vester's examination of Carr, Carr was receiving unemployment compensation.
(continued...)

7

In July 2009, Dr. Calcote treated Carr for atopic dermatitis. Dr. Calcote noted Carr's "long past history of atopic dermatitis" but that Carr "has responded extremely well in the past to [c]yclosporin. He has been off this for several weeks." (R. 219). Dr. Calcote re-initiated treatment with cyclosporin. (R. 219).

Thus, the complete medical record establishes a history of treatment for extensive skin lesions that are "well-controlled" with cyclosporin (R. 222), but which flare up at times when Carr is not taking cyclosporin. Nothing in the complete medical record conflicts with the ALJ's finding that Carr has a severe impairment of atopic dermatitis that responds "extremely well" to cyclosporin treatment. (R. 18-20).

**2.     The Commissioner's decision is supported by the record.**

Carr argues that the complete medical record establishes that his skin condition meets or medically equals the listing for skin disorders found in 20 C.F.R. pt. 404, Subpart P, Appx. 1, § 8.00. Specifically, Carr argues that he has frequent and severe flareups of his dermatitis that satisfy the listing requirements of § 8.00(C), which states:

> C.     How do we assess the severity of your skin disorder(s)? We generally base our assessment of severity on the extent of your skin lesions, the frequency of flareups of your skin lesions, how your symptoms (including

---

[4](...continued)
(R. 31). However, Carr told Dr. Vester that he was unable to afford his medication. (R. 207). As the ALJ noted, Carr later resumed taking medication (R. 19, 219). Carr was taking cyclosporin twice daily and was being treated for dermatitis at the time of the hearing in this case. (R. 34-35). The ALJ discounted Carr's comment to Dr. Vester that he was unable to afford his medication. The ALJ stated: "[Carr] told Dr. Vester he is unable to afford the medication however, he smokes one-half pack of cigarettes per day." (R. 19). Before this court, Carr does not challenge the ALJ's statement regarding his ability to afford treatment at the time he saw Dr. Vester, and he does not argue that he ceased taking medicine or suffers flare-ups because of an inability to afford treatment.

pain) limit you, the extent of your treatment, and how your treatment affects you.

. . . .

2. Frequency of flareups. If you have skin lesions, but they do not meet the requirements of any of the listings in this body system, you may still have an impairment that prevents you from doing any gainful activity when we consider your condition over time, especially if your flareups result in extensive skin lesions, as defined in C1 of this section. Therefore, if you have frequent flareups, we may find that your impairment(s) is medically equal to one of these listings even though you have some periods during which your condition is in remission. We will consider how frequent and serious your flareups are, how quickly they resolve, and how you function between flareups to determine whether you have been unable to do any gainful activity for a continuous period of at least 12 months or can be expected to be unable to do any gainful activity for a continuous period of at least 12 months. We will also consider the frequency of your flareups when we determine whether you have a severe impairment and when we need to assess your residual functional capacity.

20 C.F.R. pt. 404, Subpart P, Appx. 1, § 8.00(C)(2).

Contrary to Carr's argument, the mere presence of frequent and severe flareups does not automatically establish medical equivalence – particularly when (as here) the record establishes that the flareups resolve when the claimant resumes his prescribed treatment (R. 207-226). *See* 20 CFR § 404.1530 ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled."); *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." (Citations omitted)). Rather, § 8.00 provides that frequent flareups "may" result in a finding of medical equivalence *when various factors are considered*, particularly "how frequent and serious your flareups are, how quickly they

9

resolve, and how you function between flareups to determine whether you have been unable to do any gainful activity for a continuous period of at least 12 months or can be expected to be unable to do any gainful activity for a continuous period of at least 12 months." 20 C.F.R. pt. 404, Subpart P, Appx. 1, § 8.00(C)(2). Although Carr bears the burden of demonstrating that he has a qualifying disability, he has not made any attempt to demonstrate that any of these factors would qualify him for a finding of medical equivalence. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (holding that the social security regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work").

Moreover, Section 8.00(C) provides that frequency of flareups is only one factor taken into consideration when determining whether a claimant's condition meets or medically equals the listing. 20 C.F.R. pt. 404, Subpart P, Appx. 1, § 8.00(C). In particular, in addition to frequency of flareups, the Commissioner also considers "the extent of [the claimant's] treatment, and how [that] treatment affects [the claimant]." *Id*. Specifically, § 8.00(C)(4) & (H) provide:

> [(C)]4. Treatment. *We assess the effects of medication, therapy, surgery, and any other form of treatment you receive when we determine the severity and duration of your impairment(s)*. Skin disorders frequently respond to treatment; however, response to treatment can vary widely, with some impairments becoming resistant to treatment. Some treatments can have side effects that can in themselves result in limitations.
>
> a. *We assess the effects of continuing treatment as prescribed by determining if there is improvement in the symptoms, signs, and laboratory findings of your disorder*, and if you experience side effects that result in functional limitations.

10

> . . . .
>
> b. Because treatment itself or the effects of treatment may be temporary, *in most cases sufficient time must elapse to allow us to evaluate the impact and expected duration of treatment and its side effects. . . . [Y]ou must follow continuing treatment as prescribed for at least 3 months before your impairment can be determined to meet the requirements of a skin disorder listing.* (See 8.00H if you are not undergoing treatment or did not have treatment for 3 months.) *We consider your specific response to treatment when we evaluate the overall severity of your impairment.*
>
> H. How do we assess your skin disorder(s) if your impairment does not meet the requirements of one of these listings?
>
> 1.     These listings are only examples of common skin disorders that we consider severe enough to prevent you from engaging in any gainful activity. *For most of these listings* [excluding the listings for burns and genetic photosensitivity disorders], *if you do not have continuing treatment as prescribed, if your treatment has not lasted for at least 3 months, or if you do not have extensive skin lesions that have persisted for at least 3 months, your impairment cannot meet the requirements of these skin disorder listings.*

20 C.F.R. pt. 404, Subpart P, Appx. 1, § 8.00(C)(4) & (H)(1) (emphasis added).

Carr has not made any attempt to show that the extent and effects of treatment (when taken as prescribed for *any* period of time) establish that his skin condition meets or medically equals the listing for skin disorders. The complete medical record Carr provided contains no evidence that he experiences frequent flareups when he is continuing treatment as prescribed. *See* 20 CFR § 404.1530 (providing that failure to follow prescribed treatment will result in a finding that the claimant is not disabled). Carr's medically documented flareups occurred when he was not taking cyclosporin, and he has "no significant lesions," his skin condition is "well controlled," and he goes into remission when he resumes the

11

medication. (R. 205, 219, 220, 222; *see also, e.g.,* R. 220, 221 (flareups occurred when Carr was not taking cyclosporin)).

Accordingly, the record supports the Commissioner's finding that Carr does not have a skin condition that meets or medically equals the listing, and the Appeals Council did not err as a matter of law by refusing to remand the case for further consideration in light of Carr's complete medical record.

**B.     The ALJ's reference to nonexistent "physicians with the State Agency who reviewed the documentary record" was, at most, harmless error.**

In finding that Carr's condition did not meet or medically equal a listed impairment, the ALJ stated:

> The most closely related listed impairment to the claimant's impairments is described in Section 8.05 (dermatitis) of the Listing of Impairments. The evidence in this case demonstrates that the claimant has not exhibited significant limitations that are required to satisfy the requirements of that Listing. The conclusion that the claimant does not have impairments that meet or equal the severity of a listed impairment also is supported by the opinions of physicians with the State Agency who reviewed the documentary record. In addition, the undersigned Administrative Law Judge has examined the record and finds that the evidence does not support listing severity.

(R. 19).

Thus, in determining that Carr's condition did not meet or medically equal the listing for skin disorders, the ALJ specifically relied on (1) "the opinions of physicians with the State Agency who reviewed the documentary record" and (2) the record as a whole. *Id*. As Carr points out, however, the record contains no "opinions of physicians with [a] State Agency who reviewed the documentary record." It is not clear from the ALJ's opinion whether she misstated the role of Dr. Vester, a consulting physician who reviewed the record

(R. 207-08), whether (as Carr contends) she mistook the opinion of a state agency disability specialist for the opinion of a physician (R. 217), or whether some other error caused the ALJ to refer to nonexistent state agency physicians. The cause of the error is immaterial, however: the ALJ independently "examined the record and f[ound] that the evidence does not support listing severity" (R. 19), and, as explained in Part A of this discussion, the record supports that finding.  Therefore, the ALJ's mention of "state agency physicians" is, at most, harmless error and does not warrant reversal in this case.  *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (holding that harmless error by the Commissioner does not constitute grounds for reversal); *see also Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("[I]f there is substantially supportive evidence, the [Commissioner's] findings cannot be overturned.").

C.     **The record supports the ALJ's residual functional capacity determination, and the ALJ's hypothetical questions to the VE accounted for all of Carr's limitations.**

At step five of the sequential analysis, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a vocational expert. *Phillips*, 357 F.3d at 1239–40. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir.2002) (per curiam).

However, a hypothetical question "may be adequate where it implicitly accounts for the claimant's limitations." *Beegle v. Soc. Sec. Admin., Com'r*, 482 Fed. Appx. 483, 487 (11th Cir. 2012) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). Moreover, "[a]n ALJ's errors in conducting the five step evaluation process may be harmless if they do not prejudice the claimant." *Jones v. Comm'r of Soc. Sec.,* 2012 WL 4854707, 1 (11th Cir. 2012) (unpublished opinion) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

Dr. Vester, a consulting physician, reviewed the limited medical records that were available to him. Those records established that Carr had been treated for acute dermatitis in 2004 (R. 205), but they did not include Dr. Calcote's treatment notes regarding Carr's long history of acute dermatitis that is "well controlled" and goes into remission when he takes his prescribed medication. (R. 205, 219, 220, 222; *see also, e.g.,* R. 220, 221 (flareups occurred when Carr was not taking cyclosporin)). Dr. Vester examined Carr and found widespread lesions that "virtually cover[ed] his entire body." (R. 208). At the time of Dr. Vester's examination, Carr was not taking his prescribed medication. (R. 207, 219). Dr. Vester concluded that Carr had a "moderate" limitation caused by his skin condition. (R. 209). Dr. Vester also stated:

> In view of findings on examination, I would consider the claimant not limited with sitting. He is not limited with standing. He probably has a mild limitation with walking. He is not limited with lifting. He is moderately limited with carrying objects. He is not limited with carrying objects. [Sic]. He is not limited with handling objects. He is not limited with hearing or speaking. The claimant is not significantly limited with traveling.

14

(R. 209).

The ALJ did not specifically state that she found Carr was moderately limited with carrying objects. In fact, the ALJ stated in her opinion that "the only limitation alleged by Dr. Vester is 'mild limitation with walking.'" (R. 20). However, both the residual functional capacity determination by the ALJ (limiting Carr to medium work, with additional limitations) and the hypotheticals the ALJ posed to the VE *do* implicitly account for moderate limitations in carrying. Specifically, the Social Security regulations define medium work as work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds," and light work as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 CFR § 404.1567(b)&(c). Because the ALJ's hypotheticals to the VE expressly limited Carr to medium and light work (R. 41-42), and because the ALJ's residual functional capacity determination limited Carr to medium work, the ALJ implicitly accounted for moderate limitations in Carr's ability to carry objects. *See Beegle*, 482 Fed. Appx. at 487 (holding that a hypothetical question may be adequate if it implicitly accounts for all the claimant's limitations (citing *Winschel*, 631 F.3d at 1180)).

Further, because the VE testified that a significant number jobs requiring both light and moderate work were available that could be performed by a person with Carr's residual functional capacity (R. 41-42), Carr cannot demonstrate that he was prejudiced by the lack of an express reference to a moderate carrying limitation. *See id*. Additionally, the court notes that the functional requirements of the available jobs identified by the VE at the light

15

level of exertion — food checker (DOT # 214-482.018), small product assembler (DOT # 706.684-022), and ticket seller (DOT # 214-467.030) (R. 42) – do not appear to involve *any* carrying, and Carr makes no argument that they do. *See Jones* 2012 WL 4854707 at * 1 (holding that an ALJ's failure to specifically mention a driving limitation was "harmless [error] because it did not affect the outcome" of the case where "the functional requirements of the jobs identified by the VE . . . do not appear to involve driving. Moreover, [the claimant] makes no argument that the essential function of any of these jobs includes driving.").

Therefore, the court finds no reversible error in the ALJ's failure to specifically mention a carrying limitation, and no basis to remand this case for further clarification from Dr. Vester.

### V. Conclusion

The court has carefully and independently reviewed the record and concludes that the decision of the Commissioner is supported by substantial evidence and the Commissioner did not err as a matter of law. Therefore, the decision of the Commissioner is due to be affirmed. This case will be dismissed with prejudice.

A separate final judgment will be entered.

Done this 30th day of January, 2013.

                                             /s/Charles S. Coody
                                             CHARLES S. COODY
                                             UNITED STATES MAGISTRATE JUDGE